Filed 5/4/23  P. v. Ortega CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D080017 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. RIF1902524) |
| JOE ORTEGA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Riverside County, Bernard J. Schwartz, Judge.  Sentence vacated and remanded for resentencing.

Tonja R. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier, Warren J. Williams and Joy Utomi, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found Joe Ortega guilty of one count of stalking while a restraining order was in effect (Pen. Code, § 646.9),[1] one count of making a criminal threat (§ 422), four counts of misdemeanor violation of a protective order (§ 166, subd. (c)(1)), and one count of misdemeanor making of annoying and threatening phone calls (§ 653m, subd. (a)). The trial court imposed an upper term sentence of four years.

Ortega contends that his sentence should be vacated and this matter should be remanded for the trial court to apply the amendments to section 1170, subdivision (b) and section 654 that went into effect after his sentencing. Ortega also contends that remand is required so that the trial court can correct an error in calculating his presentence custody credits.

We conclude that Ortega's arguments have merit. We accordingly vacate the sentence and remand for resentencing.

I.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Ortega's Past Domestic Violence Toward Jane Doe*

Over the course of several years, Ortega and Jane Doe were in an on-again, off-again intimate relationship, including living together. According to Jane Doe's trial testimony, Ortega was violent to her on multiple occasions. At trial, Jane Doe described three specific incidents of violence occurring prior to the events for which Ortega was prosecuted in this action. Ortega was prosecuted and convicted for those three incidents.

First, in September 2012, Ortega threw an iPad at Jane Doe, hitting her in the mouth. Second, in June 2014, while subject to a protective order against any negative contact with Jane Doe, Ortega punched Jane Doe in the

---

[1]    Unless otherwise indicated, all further statutory references are to the Penal Code.

2

face and head and threatened to kill her.  Finally, in July 2017, Ortega choked Jane Doe and then threatened to kill her.  After that incident, Jane Doe obtained a protective order valid until December 2020 that required Ortega to stay away from her and have no contact with her.

B.      *The Events Giving Rise to This Prosecution*

The incidents that gave rise to the instant criminal prosecution began in December 2018.  During a period when Jane Doe had recently broken off a renewed relationship with Ortega, he came to Jane Doe's third-floor apartment and knocked on the door.  When Jane Doe did not open the door, Ortega climbed onto Jane Doe's balcony patio, which is something he had done multiple times before.  Jane Doe called 911, but Ortega left while Jane Doe was on the 911 call.  When Ortega returned a short time later, Jane Doe again called 911 because Ortega was continually knocking and pushing hypodermic needles underneath her door.

As of late January 2019, Jane Doe had broken off another short-lived attempt to try to reestablish a relationship with Ortega.  In January and February 2019, Ortega called Jane Doe many times a day, during which he would speak to her in a hostile and insulting manner.  On one call, Ortega threatened to "beat the fuck" out of Jane Doe, which made her fearful.  During that time period, Ortega would also come to Jane Doe's apartment and climb onto her balcony.

In June 2019, Ortega knocked on Jane Doe's door late at night, and the next morning she found him on her balcony.  Ortega was yelling, angry, and refused to leave.  According to Jane Doe, Ortega threatened "he was gonna beat me up and he was gonna come in."

3

C.      *Ortega's Trial, Conviction, and Sentence*

In September 2021, Ortega was tried on one count of stalking while a restraining order was in effect (§ 646.9), two counts of making a criminal threat (§ 422), four counts of misdemeanor violation of a protective order (§ 166, subd. (c)(1)), and one count of misdemeanor making of annoying and threatening phone calls (§ 653m, subd. (a)).

Ortega testified at trial. He admitted three prior convictions based on violent conduct against Jane Doe. First, Ortega admitted he pled guilty to willful infliction of corporal injury (§ 273.5) in 2013 for the 2012 incident where he was accused of throwing an iPad at Jane Doe. However, he denied actually having thrown an iPad. Second, Ortega admitted that in 2015 he again pled guilty to willfully inflicting corporal injury (§ 273.5) based on the 2014 incident during which he punched Jane Doe. Although Ortega admitted he did strike Jane Doe on that occasion, he claimed that she hit him first. Third, Ortega admitted that in 2017 he pled guilty to assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4)) after being accused of choking Jane Doe. However, he denied that he actually choked Jane Doe, and he claimed there was no physical altercation between them that day. Ortega also admitted to criminal convictions before he met Jane Doe: a felony domestic violence conviction around 2005 or 2006, and a conviction for being a felon in possession of a firearm in 2011.

During his testimony, Ortega disputed Jane Doe's description of the incidents that gave rise to this prosecution. Among other things, Ortega contended that he was living with Jane Doe at the time of the December 2018 incident, and that he was on the balcony because he went out to smoke and got locked out. Ortega also testified that he continually telephoned Jane Doe in early 2019 because he was trying to retrieve his personal items from her,

4

such as his identification and his debit card, but Jane Doe was unreasonably withholding them. Finally, Ortega testified that although he slept on Jane Doe's balcony in June 2019, he did so because he was stuck without a way to get home, and he did not threaten Jane Doe during that incident.

The jury found Ortega guilty on all of the counts except for one of the counts alleging that he made a criminal threat (§ 422). As to that count, the jury was unable to reach a verdict, and the trial court declared a mistrial and dismissed it.

On September 30, 2021, the trial court sentenced Ortega to an upper term sentence of four years, using the stalking conviction (§ 646.9) as the principal count. Pursuant to section 654, the trial court stayed the 180-day jail sentences on each of the remaining counts. The trial court determined that Ortega was entitled to 1684 days of presentence custody credit, which it noted would result in Ortega's release from custody as those credits exceeded the four-year term it had imposed.

Ortega appeals from the judgment.

## II.

## DISCUSSION

A. *Remand Is Warranted For the Trial Court to Apply the Newly Enacted Amendments to Section 1170 and Section 654*

We first consider Ortega's contention that remand is warranted so that the trial court may apply two amended sentencing provisions that went into effect after Ortega was sentenced in September 2021.

1. *The Newly Enacted Amendments Are Retroactively Applicable to Nonfinal Cases*

Effective January 1, 2022, two amended sentencing provisions that are relevant in this case went into effect. First, effective January 1, 2022, section 1170 was amended. (See Sen. Bill No. 567 (2021-2022 Reg. Sess.);

5

Stats. 2021, ch. 731, § 1.3; Assem. Bill No. 124 (2021-2022 Reg. Sess.); Stats. 2021, ch. 695, § 5.)  As relevant here, under the amended statute, a trial court must "order imposition of a sentence not to exceed the middle term," except under limited circumstances.  (§ 1170, subd. (b)(1).)  An upper term may be imposed "only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."  (*Id*., subd. (b)(2).)  Nevertheless, "the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury."  (*Id*., subd. (b)(3).)  The amended statute is relevant here because, as we have explained, the trial court selected the upper term for the principal count.

Second, when Ortega was sentenced, former section 654 provided that an "act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."  (Former § 654, subd. (a).)  Effective January 1, 2022, section 654 was amended to provide that where an act or omission is punishable by different provisions, the defendant "may be punished under either of such provisions."  (§ 654, subd. (a); Assem. Bill No. 518 (2021-2022 Reg. Sess.); Stats. 2021, ch. 441, § 1.)  Thus, where section 654 applies, a trial court now has discretion to determine which counts will be stayed, regardless of which count provides for the longest term of imprisonment.  Here, the statutory amendment is relevant because, as required by the former version of section 654,

6

subdivision (a), the trial court punished Ortega by requiring him to serve the longest term of punishment, which was for the stalking conviction. (§ 646.9.)

The parties correctly agree that the amended sentencing provisions in sections 1170, subdivision (b), and 654, subdivision (a), apply retroactively to Ortega because his case is not yet final on appeal. (*People v. Lopez* (2022) 78 Cal.App.5th 459, 465 (*Lopez*) [retroactivity of amendments to § 1170, subd. (b)]; *People v. Mani* (2022) 74 Cal.App.5th 343, 379 [retroactivity of amendments to § 654].) However, the People contend that we need not remand for the trial court to apply the amended sentencing provisions because the trial court's application of the former sentencing provisions was not prejudicial.

2. *The Amended Version of Section 1170, Subdivision (b)*

We first examine whether, as the People contend, the trial court's imposition of an upper term sentence under the prior version of section 1170, subdivision (b) was harmless.

The trial court explained its selection of the upper term sentence as follows: "That term is chosen for a number of reasons: One, the defendant's criminal history; two, the continuous violations of court orders in this case and what could be described as constant terrorizing of the victim in this case; and, three, the nature and circumstances of the underlying charge are serious in nature." None of the aggravating factors upon which the trial court relied were found by the trier of fact, set forth in a stipulation, or reflected in a certified record of conviction. Thus they would no longer be permissible aggravating factors under the current version of section 1170, subdivision (b). Specifically, the jury did not find, and Ortega did not stipulate, that Ortega engaged in a "continuous" violation of court orders that "terroriz[ed]" Jane Doe, or that the underlying charges were "serious" in nature. Further, although Ortega admitted during his testimony to several criminal

7

convictions, those admissions were made during testimony (with Ortega denying the underlying conduct), not in a stipulation, and there is no indication that Ortega's criminal history was presented to the trial court in certified records of conviction.

In *Lopez*, this court set forth a two-step inquiry that applies when evaluating whether it was prejudicial error to sentence a defendant under the prior version of section 1170, subdivision (b). (*Lopez, supra*, 78 Cal.App.5th at pp. 465-468.)[2]

"[T]he initial relevant question for purposes of determining whether prejudice resulted from failure to apply the new version of the sentencing law is whether the reviewing court can conclude beyond reasonable doubt that a jury would have found true beyond a reasonable doubt *all* of the aggravating factors on which the trial court relied in exercising its discretion to select the upper term. If the answer to this question is 'yes,' then the defendant has not suffered prejudice from the court's reliance on factors not found true by a jury in selecting the upper term." (*Lopez, supra*, 78 Cal.App.5th at p. 467, fn. 11.) As we will explain, we are unable to conclude that the jury would have found true *all* of the aggravating factors upon which the trial court relied.

As an initial matter, with respect to the trial court's reliance on Ortega's criminal history as an aggravating factor, because Ortega did admit

2        We note that "[t]here currently is a split of authority concerning the applicable harmlessness standard." (*People v. Butler* (2023) 89 Cal.App.5th 953, 956.) The Supreme Court has granted review to decide the issue. (See *People v. Lynch* (May 27, 2022, C094174) [nonpub. opn.], review granted Aug. 10, 2022, S274942.) Because both the People's and Ortega's briefing applies the harmless error analysis that this court set forth in *Lopez, supra*, 78 Cal.App.5th at pages 465-468, and neither party argues for the application of a different standard, we need not, and do not, address the current disagreement regarding the applicable standard.

to his previous convictions during his testimony, we can conclude, beyond a reasonable doubt, that the jury would have made the same true finding about Ortega's criminal history. However, as to the remainder of the aggravating factors, we cannot determine whether a jury would agree with the trial court that (1) Ortega's violation of the court orders was "continuous" in that he "constant[ly] terroriz[ed]" Jane Doe, and (2) the underlying charges were "serious." Those findings are subjective in nature and would necessarily depend on how individual jurors chose to view and characterize Ortega's conduct. (See *People v. Sandoval* (2007) 41 Cal.4th 825, 840 ["to the extent a potential aggravating circumstance at issue in a particular case rests on a somewhat vague or subjective standard, it may be difficult for a reviewing court to conclude with confidence that, had the issue been submitted to the jury, the jury would have assessed the facts in the same manner as did the trial court"].) Especially in light of Ortega's testimony at trial, in which he disputed much of Jane Doe's account of the relevant incidents, and in light of the complicated history of the relationship between Jane Doe and Ortega, we are unable to determine whether a jury would have made the same findings as the trial court regarding the aggravating factors. Thus, we cannot conclude, in the first step of the *Lopez* inquiry, that it was harmless for the trial court to have applied the prior version of section 1170, subdivision (b) in sentencing Ortega.

In the second step of the *Lopez* inquiry, when we have been unable to find harmless error in the first step, we look to "whether a reviewing court can be certain, to the degree required by *People v. Watson* (1956) 46 Cal.2d 818, 836, that the trial court would nevertheless have exercised its discretion to select the upper term if it had recognized that it could permissibly rely on only a single one of the aggravating factors, a few of the aggravating factors,

9

or none of the aggravating factors, rather than all of the factors on which it previously relied." (*Lopez, supra*, 78 Cal.App.5th at p. 467, fn 11.) The question is "whether it is reasonably probable that a more favorable sentence would have otherwise been imposed absent the trial court's improper reliance on" impermissible factors. (*Id*. at p. 467.) If we "cannot conclude that the trial court would have selected an upper term sentence based on . . . some constellation of permissible aggravating factors," we must "conclude that remand is required to allow the trial court the opportunity to exercise its discretion to make its sentencing choice in light of the recent amendments to section 1170." (*Lopez*, at p. 468.)

Here, the only permissible aggravating factor upon which the trial court relied was Ortega's criminal history. As we have explained, we have determined, beyond a reasonable doubt, that the jury would have made a true finding regarding that criminal history because Ortega admitted his prior convictions during his testimony. However, based on the record before us, we cannot conclude it is reasonably probable that the trial court would have departed from the now-presumptive middle term, and would have selected an upper term sentence, if the *only* aggravating factor it considered was Ortega's criminal history. This is especially the case because the other two aggravating factors relied upon by the trial court concerned the nature of Ortega's *instant* offenses, not his *prior* offenses. (Cf. *Lopez, supra*, 78 Cal.App.5th at p. 468 [given the "long list of aggravating factors" relied upon by the trial court, the record did not indicate that the trial court would have imposed an upper term based solely on aggravating factors relating to the defendant's prior convictions].) The record simply does not contain the information necessary for us to determine how the trial court would have exercised its discretion had it considered only Ortega's criminal history.

10

The People's argument to the contrary is not persuasive. The People's main contention is that the trial court's actions "demonstrate that it believed [Ortega] deserved an aggravated sentence" because it "found that the underlying offense was serious and that [Ortega] had terrorized Jane Doe over a continuous period of time." This argument fails because it depends on the *impermissible* aggravating factors that were not found by a jury or contained in a stipulation. The People also contend it is significant that "[t]he trial court . . . imposed the upper term sentence even knowing that [Ortega] had excess presentence custody credits that would result in his release with credit for time served." We are not persuaded that fact has any bearing on whether the trial court would impose an upper term sentence were it only able to rely on Ortega's criminal history, and the People do not explain why such a conclusion is warranted.

In sum, we reject the People's contention that it was harmless for the trial court to have sentenced Ortega under the prior version of section 1170. Accordingly, we vacate Ortega's sentence, and we remand for the trial court to apply the current version of section 1170, subdivision (b).[3]

3. *The Amended Version of Section 654*

We next turn to Ortega's contention that remand is also required to allow the trial court to apply the amended version of section 654, which no

---

[3] As we explained in *Lopez*, "[o]n remand, the People may elect to proceed under the requirements of the newly-amended version of section 1170, subdivision (b), which would permit the People to prove the existence of aggravating factors beyond a reasonable doubt to a jury, unless the defendant waives the right to a jury and agrees to have the factors decided by the court beyond a reasonable doubt; alternatively, the People may accept resentencing on the record as it stands." (*Lopez, supra*, 78 Cal.App.5th at p. 468.)

longer requires that punishment be imposed on the count that provides for the longest term of imprisonment.  (§ 654, subd. (a).)

The People contend that it was not prejudicial for the trial court to sentence Ortega under the former version of section 654.  According to the People, we can conclude, based on the record, that the trial court would *not* have exercised its discretion to impose a different sentence.  However, it is unnecessary for us to address the People's argument, because we are already vacating Ortega's sentence and remanding the matter.  During resentencing, Ortega may present the trial court with any sentencing arguments he may have, including his section 654 arguments.  (See *People v. Valenzuela* (2019) 7 Cal.5th 415, 424-425 ["the full resentencing rule allows a court to revisit all prior sentencing decisions when resentencing a defendant"].)

B.    *On Remand, the Trial Court Should Address Ortega's Presentence Custody Credits*

Ortega points out in his opening appellate brief that the trial court appears to have made an error in calculating his presentence custody credits because it did not take into account a period of custody in February and March 2019.  The People agree that there is a discrepancy in the record that needs to be clarified by the trial court.

On remand for resentencing, the trial court should address the issue of Ortega's presentence custody credits to determine whether it previously failed to award credit to which Ortega was entitled.

12

DISPOSITION

The sentence is vacated and this matter is remanded for resentencing under the current versions of section 1170, subdivision (b) and section 654. In all other respects, the judgment is affirmed.


IRION, J.

WE CONCUR:


HUFFMAN, Acting P. J.


DO, J.

13